UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
AMEET GOYAL,                                              :
                                                          :
                              Petitioner                  :          23 Civ. 1516 (CS)
                      - v. -                              :
                                                          :          S1 19 Cr. 844 (CS)
UNITED STATES OF AMERICA,                                 :
                                                          :
                              Respondent.                 :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE HIS CONVICTIONS AND SENTENCE**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

Vladislav Vainberg
David Felton
Margery Feinzig
Assistant United States Attorneys
     *Of Counsel*

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the motion filed by Petitioner Ameet Goyal ("Goyal" or the "Defendant" or "Petitioner"), proceeding *pro se*, to vacate his convictions and sentence pursuant to 28 U.S.C. § 2255 (the "Petition"). (Dkt. No. 123). In the Petition, Goyal argues that his counsel Marc L. Mukasey ("Mukasey") and Torrey K. Young ("Young") were constitutionally ineffective for (1) providing deficient advice regarding the Government's pre-indictment plea offer; and (2) providing deficient advice regarding the Government's post-S1-Superseding-Indictment plea offer that Goyal accepted and pleaded guilty to. Both arguments are meritless. Because Goyal's claims are squarely contradicted by the record, including Mukasey's and Young's sworn affidavits, attached hereto as Exhibits A and B, respectively, and in any case do not demonstrate any cognizable prejudice to Goyal, the Court should deny the Petition without an evidentiary hearing.

## RELEVANT BACKGROUND

**Pre-Indictment Plea Negotiations.** After a multi-year Government health care fraud investigation into Goyal, in August 2019, Goyal retained Mukasey Frenchman after the Government indicated that criminal charges were likely to be forthcoming and that plea negotiations, if any, would have to take place in short order. (Ex. B ¶¶ 9-10). Following months of plea negotiations, on October 2, 2019, the Government sent Mukasey a proposed plea agreement for Goyal's consideration (the "2019 Plea Agreement"). The 2019 Plea Agreement contained a Stipulated Guidelines Range of 51 to 63 months' imprisonment. (Ex. A ¶¶ 11-17; Ex. B ¶¶ 10-17). The Government set a deadline of October 10, 2019 for Goyal to decide whether he wished to accept the 2019 Plea Agreement offer. (Ex. A ¶ 17; Ex. B ¶ 17). Among other things, Mukasey informed Goyal that if he did not accept the 2019 Plea Agreement offer, the Sentencing Guidelines

range of 51 to 63 months' imprisonment would get much higher.  (Ex. A ¶ 18; Ex. B ¶ 18).  On

October 10, 2019, Goyal and counsel signed the 2019 Plea Agreement and sent it to the

Government.  (Ex. A ¶ 19; Ex. B ¶ 19).  The 2019 Plea Agreement signed by Goyal and defense

counsel is attached hereto as Exhibit C.  A change-of-plea court proceeding was scheduled for

November 8, 2019.  (Ex. A ¶ 21; Ex. B ¶ 20).  Shortly before the November 8, 2019 guilty plea,

Goyal changed his mind and rejected the 2019 Plea Agreement offer.  (Ex. A ¶ 21; Ex. B ¶ 20).

Both Mukasey and Young advised Goyal of the difficulties he would face at trial, did not advise

Goyal to reject the 2019 Plea Agreement offer because they "would win his trial," did not advise

Goyal that a guilty plea was not in his best interest, and did not promise or guarantee Goyal that

they would win his trial.  (Ex. A ¶ 22; Ex. B ¶ 21).

**Original Indictment.**  The original indictment in this case returned on November 21, 2019

charged Goyal, an ophthalmologist and oculoplastic surgeon, with participating in a scheme to

defraud the Medicare program, private insurance plans, and patients between at least in or about

January 2010 and about March 2017.  *See generally* ECF No. 2 ("Indictment").  Count One

charged the defendant with healthcare fraud, in violation of 18 U.S.C. § 1347; Count Two charged

wire fraud, in violation of 18 U.S.C. § 1343; and Count Three charged false statements relating to

health care matters, in violation of 18 U.S.C. § 1035 (collectively, the "Healthcare Fraud

Scheme").

The Indictment alleged that Goyal conducted the fraud through the Eye Associates Group,

an ophthalmology and oculoplastic surgery medical practice that Goyal owned and operated with

locations in Rye, Wappingers Falls, Mt. Kisco, New York and Greenwich, Connecticut (the

"Practice").  *Id.* ¶¶ 5-6, 22-26.  The Practice also employed other ophthalmologists and other

employees who reported to Goyal.  *Id.*  As alleged, from in or about January 2010 through March

2017, Goyal and others at the Practice systematically submitted claims for procedures not performed, such as orbitotomies, conjunctivoplasties, and excision and repair of eyelid, when in fact the procedure actually performed was an excision of chalazion or other similar lower-paying minor eyelid procedure. *Id.* ¶ 22. During the relevant time period, Goyal and others at the Practice billed over $8 million for supposedly performed orbitotomies, parallel conjunctivoplasties, and excisions and repair of eyelid, and received over $3 million in payments. *Id.* ¶¶ 3, 24. "A substantial portion of these claims contained fraudulent billing for procedures not performed." *Id.* As part of the scheme, the Indictment alleged that Goyal "personally falsified certain patient medical records" to match his fraudulent billing claims, "directed employees of the Practice to falsify billing documents and other medical records," and "threatened the livelihood of employees of the Practice who were reluctant to comply with these directions." *Id.* ¶ 23. Goyal also initiated debt collection procedures against multiple patients who did not pay the full amount of fraudulently billed procedures. *Id.* ¶ 26.

**Goyal Warned Not to Commit a Crime While on Pre-Trial Release.** On November 22, 2019, Goyal was presented and arraigned before the Honorable Paul E. Davison, U.S. Magistrate Judge, on the Indictment. Judge Davison ordered that Goyal be released on a $1,000,000, fully secured bond subject to a number of conditions, including that Goyal not commit any new crimes. Judge Davison explicitly warned Goyal that he would face severe consequences should he commit another felony while on pretrial release:

> THE COURT: If you don't follow Pretrial's instructions, you're in violation of your bail conditions. Your bail could be revoked. Sir, this is a setting of bail. That means, upon your release, you must refrain from committing any violations of law whatsoever. That includes federal, state and local crimes. If you commit a felony while you're on release for this charge, you may be subject to an additional prison term of up to ten years. That's on top of whatever you're facing

on these charges and on top of whatever you might be facing on the new charges. . . .

. . . If you violate any of the conditions of your release, your bail may be immediately revoked and you may be detained pending trial.

(Dkt. No. 110 at 11-2; Ex. A ¶ 24).

At a conference later on the same day, in a transcript attached hereto as Exhibit D, this Court reiterated the serious consequences that could follow if Goyal violated his bail conditions:

THE COURT: All right.  So, Dr. Goyal, you're going to be released on the conditions set by the Magistrate Judge this morning.  Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right.  And you understand the consequences can be very serious if you violate any of those conditions?

THE DEFENDANT: Yes, ma'am.

(Nov. 22, 2019 Tr. ("Ex. D") at 6; Ex. A ¶ 25).

That same day, as part of his pre-trial release appearance bond, Goyal signed an Advice of Penalties and Sanctions that made clear: "While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years . . . .  This sentence will be consecutive (i.e., in addition to) to any other sentence you receive."  (Dkt. No. 5 at 3; Ex. A ¶ 26). Goyal signed and acknowledged that he was "aware of the penalties and sanctions set forth above." (Dkt. No. 5 at 3).

Within months, Goyal would disregard these warnings and the law to embark on a second egregious fraud, stealing money from a program intended to benefit employers and employees facing the COVID-19 pandemic.

**Superseding Indictment.**  On June 23, 2020, a Superseding Indictment was returned charging Goyal with committing additional crimes while on pretrial release.  *See generally* ECF No. 21 ("Sup. Ind.").  The Superseding Indictment added three new counts arising from Goyal's

4

scheme between in or about April and June 2020 to defraud the Paycheck Protection Program ("PPP") administered by the Small Business Administration ("SBA") and a participating bank (the "Bank") into approving two forgivable loans for his Practice.  *Id.* ¶¶ 33-58.   Count Four of the Superseding Indictment charged Goyal with bank fraud, in violation of 18 U.S.C. § 1344; Count Five charged false statements to a bank, in violation of 18 U.S.C. § 1014; and Count Six charge false statements, in violation of 18 U.S.C. § 1001 (collectively, the "PPP Fraud Scheme").  Each of these counts also charged a violation of 18 U.S.C. § 3147 for Goyal's commission of these offenses while on pre-trial release for the healthcare fraud charges.  As alleged, Goyal defrauded the PPP by concealing the Healthcare Fraud Scheme and affirmatively misrepresenting that he was not subject to any pending charges as required to access the program.  *Id.* ¶¶ 35-58.  On top of that, to circumvent the program's single-loan-per-business restriction intended to make the limited funds available to as many businesses as possible, Goyal successfully submitted multiple fraudulent applications under different names, e-mail addresses, and business identification numbers for his single Practice.  *Id.*  Having successfully manufactured two separate businesses in the eyes of the PPP, and lied about the pending charges that disqualified him from the PPP, Goyal was approved for two loans and received $637,200 from this scheme from the Bank.  *Id.*

As for the Healthcare Fraud Scheme, whereas Counts One and Three alleged a scheme to defraud insurance providers only, Count Two alleged a scheme to defraud both insurance providers and patients.  *Id.* ¶¶ 27, 28, 31.

**Motion Practice.**  Among other pre-trial motions, Goyal moved to dismiss Counts One through Three relating to the Healthcare Fraud Scheme on the basis that these Counts were legally insufficient and did not provide Goyal with sufficient notice to defend himself.  (Dkt. No. 18 at 1, 8-15; Ex. A ¶ 30).  The Court denied the motion to dismiss, ruling that the charges were "more

than sufficiently specific" in the "detailed speaking indictment" that "gives plenty of detail about the scheme and how it was carried out."  (Dkt. No. 40 at 3).

**Guilty Plea.**  On September 13, 2021, approximately one week before the scheduled start of trial on September 20, 2021, Goyal pleaded guilty pursuant to a September 12, 2021 plea agreement ("2021 Plea Agreement"), attached hereto as Exhibit E, to all six counts of the S1 Indictment, with a Stipulated Guidelines Range of 151-188 months.[1]  Goyal explained, in sum and substance, that the Court's adverse rulings on the motions *in limine*, and the effect they would have on the presentation of evidence at trial, changed his view of the case and informed his decision to change his mind and plead guilty.  He said that he realized that the Government's case would be difficult to overcome.  (Ex. A ¶ 42; Ex. B ¶ 41).

As for any sentence that Goyal would face, Mukasey and Young advised Goyal that the Court was not a party to the 2021 Plea Agreement, was not bound by its Stipulated Guidelines Range, and was not bound by the Guidelines themselves, which are simply advisory, and that the Court could sentence him above or below the Stipulated Guidelines Range of 151-188 months. (Ex. A ¶ 46; Ex. B ¶ 45).  Mukasey explained to Goyal that the sentence to be imposed on him would be determined solely by the Court with reference to a Pre-Sentence Report, the advisory Sentencing Guidelines, the factors enumerated in 18 U.S.C. § 3553(a), and the parties' written submissions, and that his ultimate sentence would be up to the Court.  (*Id.*)  Neither Mukasey nor

---

[1] Goyal had previously rejected a November 2020 plea offer with a Stipulated Guidelines Range of 78-97 months' imprisonment.  In connected with the Goyal-rejected November 2020 plea offer, Mukasey and Young had "advised Goyal, in sum and substance, that a guilty plea was in his best interest, provided that he could state truthfully and under oath that he acted with intent to defraud. [They] made it clear to him that the decision to plead guilty or not plead guilty was his, and that if he chose to keep up the fight, [they] would make [their] best effort at trial.  Goyal responded that he wanted to fight, not plead guilty."  (Ex. A ¶ 39-40; Ex. B ¶ 38-39).

Young promised or guaranteed Goyal that he would receive any specific sentence after a plea or trial.  (Ex. A ¶ 50; Ex. B ¶ 49).

Under the 2021 Plea Agreement, Goyal agreed, *inter alia*, not to appeal or collaterally challenge any sentence less than or equal to 188 months' imprisonment.  As noted in the 2021 Plea Agreement, "It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Government's Stipulated Guidelines Range of 151 to 188 months' imprisonment."  2021 Plea Agreement ("Ex. E") at 6. Further, "[t]he defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty."  *Id.* at 7.  With respect to sentencing, as set forth in the 2021 Plea Agreement:

> It is understood that the sentence to be imposed upon the defendant is determined solely by the Court.  It is further understood that the Guidelines are not binding on the Court.  The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence.  This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive.

*Id.* at 7.

Before accepting Goyal's guilty plea, this Court conducted a careful and thorough allocution that complied with Rule 11 of the Federal Rules of Criminal Procedure.  (Dkt. No 112 ("Plea Tr.") at 1-40).  During the proceeding, Goyal was placed under oath, and the Court established that he was competent to plead guilty.  (Plea Tr. at 2, 5).  The Court then confirmed that Goyal had discussed the case with his attorneys, had told his attorneys everything he knew about the case, and was satisfied with his attorneys' representation, including attorneys Mukasey and Young.  (*Id.* at 4-5, 8, 23).  Goyal was advised of the elements of the six offenses to which he

would be pleading guilty, and the maximum penalties that he faced as a result of that guilty plea. The Court also confirmed that Goyal understood the rights he was giving up by pleading guilty. Goyal confirmed that his decision to plead guilty was voluntary and made of his own free will. (*Id.* at 34-36). Goyal stated that he had reviewed the 2021 Plea Agreement in its entirety with his attorneys and understood its terms. (*Id.* at 23).

The Court confirmed that nobody had promised Goyal what his sentence would be and that he understood that the sentencing Guidelines calculations in the 2021 Plea Agreement were not binding on the Court, which would make its own determination of Goyal's Guidelines range, and would consider the Guidelines and the sentencing factors under 18 U.S.C. § 3553, in determining the appropriate sentence. (*Id.* at 20-21, 24). Goyal further affirmed that he understood that even after the Court determines the Guidelines range, the Court "might settle on a sentence higher or lower than what the guidelines recommend." (*Id.* at 21). The Court asked Goyal whether he understood that under the 2021 Plea Agreement, Goyal was "giving up [his] right to appeal or otherwise attack or challenge any sentence within or below the stipulated guidelines range of 151 to 188 months imprisonment," and Goyal answered, "Yes." (*Id.* at 24-25).

Moreover, the Court asked Goyal whether he understood that under the 2021 Plea Agreement, if Goyal's "sentence is different from what [his] lawyer or anyone else told [him] it might be or if it's different from what [he] expect[s] or if it's different from what's contained in [his] plea agreement with the government," then he still nonetheless will be "bound by [his] guilty plea and [he] will not be allowed to withdraw [his] guilty plea?" (*Id.* at 24). Goyal confirmed that he understood. Goyal further made clear that nobody had promised him what his sentence would be. (*Id.*).

Additionally, the Court confirmed that there was an adequate factual basis for the plea.

Goyal stated, in relevant part, that

> Between 2010 and 2017, I made false statements to insurance companies and to the government's Medicare program. The false statements were material because they related to CPT codes and other things that determine the reimbursement I received for providing medical services. I made these false statements and I caused people who worked for me to make them in order to get reimbursed for medical services at a higher rate than I was entitled.
>
> My actions were intentional and willful. I knew what I was doing was wrong, and it took place by wire communications in and around Westchester.
>
> As you know, Judge, I got indicted for making those false statements about coding, and while I was out on bail in April of 2020, I applied for SBA loans to my business through Citibank, and when I applied for the loans, I didn't disclose truthfully on the application forms that I was under criminal indictment because I knew it would disqualify me from getting a loan. Again, what I did was knowing, intentional and wrong. This also happened in Westchester.
>
> . . . . I'm here today without reservation to accept all responsibility for my conduct. What I did was wrong, plain and simple. No excuses. I apologize to the Court, to the government and insurance companies and to my community.

(*Id.* at 31-32.)

Defense counsel confirmed that he did not know of any reason why the Court should not recommend acceptance of Goyal's guilty plea. (*Id.* at 26.)

**Sentencing.** On March 3, 2022, the Court sentenced Goyal to 96 months' imprisonment. The Court imposed 60 months as to Counts One, Two, and Three, to run concurrently with each other, and 36 months as to Counts Four, Five, and Six, to run concurrently with each other, and consecutive to the 60 months' term for a total of 96 months' imprisonment. (Dkt. No. 108 at 3).

Goyal was advised of his right to appeal.  (*Id.*; Mar. 3, 2022 Tr. ("Sentencing Tr."), attached hereto as Exhibit F, at 60).

      **Goyal's Petition.**  On March 23, 2023, Goyal, proceeding *pro se*, electronically docketed his Petition.  (Dkt. No. 123).  The Court ordered, among other things, Goyal to file an "ink-signed, sworn affidavit setting forth the factual basis for the allegations in the 2255 Petition."  (Dkt. No. 131 at 2).  On May 2, 2023, the Court docketed Goyal's handwritten letter noting that he affirmed the allegations in his Petition.  (Dkt. No. 135).  To the extent this handwritten letter satisfies the Court's order that Goyal file an "ink-signed, sworn affidavit setting forth the factual basis for the allegations in the 2255 Petition," the Government responds in this opposition memorandum.

      On May 23, 2023, Mukasey and Young submitted sworn affidavits, *see* Exs. A & B, to the Government in response to Goyal's Petition.

## DISCUSSION

**I.**    **Applicable Legal Standards Governing Ineffective Assistance of Counsel Claims**

      A claim that counsel was constitutionally ineffective is evaluated under the two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Hill v. Lockhart*, 474 U.S. 52 (1985).  To prevail, a petitioner must (i) prove that counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms," and (ii) prove prejudice from the alleged dereliction in counsel's performance.  *Strickland*, 466 U.S. at 687-88, 693.  Only if both elements are satisfied is a petitioner entitled to relief.  *Id.* at 687.  The *Strickland* test has been characterized as "rigorous" and "highly demanding."  *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (citations and internal quotation marks omitted); *see also Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (comparing a successful ineffective assistance of counsel habeas claim to "thread[ing] [a] needle"); *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) ("A

defendant seeking to overturn a conviction on the ground of ineffective assistance of counsel bears a heavy burden.").

### A.  Deficient Performance

Under the first prong, the reviewing court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689).

A defendant is entitled to effective assistance of counsel in connection with plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 160 (2012). "[D]efense counsel must give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty." *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (citation and internal quotation marks omitted). "As part of this advice, counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him as well as the alternative sentences to which he will most likely be exposed." *Id.* at 45 (citation omitted). To establish a Sixth Amendment violation, the defendant must establish that his attorney in fact failed to communicate a plea offer, or failed to provide objectively reasonable advice about the decision to plead guilty. *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998).

However, counsel need not expressly advise the defendant as to the ultimate decision of whether to in fact plead guilty; rather, "the ultimate decision whether to plead guilty must be made by the defendant," and a lawyer may not coerce a client into accepting or rejecting a plea offer. *Purdy*, 208 F.3d at 45. "Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because '[r]epresentation is an art,' and '[t]here are countless ways to provide

effective assistance in any given case.'  Counsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea . . . , whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision."  *Id.* (citing *Strickland*, 466 U.S. at 693).

In the context of an ineffective assistance claim relating to counsel's performance at trial, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689.  "Counsel's performance is examined from counsel's perspective at the time of and under the circumstances of trial."  *Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 688).  Therefore, "'[j]udicial scrutiny of a counsel's performance must be highly deferential . . . [and] every effort [must] be made to eliminate the distorting effects of hindsight.'"  *Cox v. Donnelly*, 387 F.3d 193, 198 (2d Cir. 2004) (quoting *Strickland*, 466 U.S. at 689).  "As a general rule, a habeas petitioner will be able to demonstrate that a trial counsel's decisions were objectively unreasonable only if there [was] *no* . . . tactical justification for the course taken."  *Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006) (internal citation and quotation marks omitted) (emphasis added).  For that reason, "[s]trategic choices made by counsel after thorough investigation . . . are virtually unchallengeable . . . and there is a strong presumption that counsel's performance falls 'within the wide range of reasonable professional assistance.'"  *Gersten v. Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 689-90).

## B.  Actual Prejudice

A petitioner must also show actual prejudice, which is a heavy burden.  *Strickland*, 466 U.S. at 692-93.  To prove actual prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  A petitioner cannot prove prejudice by showing merely that counsel's errors had "some conceivable effect" on the result, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693.

Moreover, "a petitioner cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit." *Harrington v. Richter*, 562 U.S. 86, 130 (2011).  It is both self-evident and the clear law in the Second Circuit that the "failure to make a meritless argument does not rise to the level of ineffective assistance." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995); *see also United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d Cir. 2008) (same); *United States v. Abad*, 514 F.3d 271, 275–76 (2d Cir. 2008) ("counsel could not therefore have been ineffective for failing to make a motion that would have been futile.").  In the context of an allegation that counsel acted ineffectively by failing to file a motion, the presumption of competent attorney performance under *Strickland* will be rebutted only if the defendant proves that defense counsel failed "'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland*, 466 U.S. at 691).  In assessing claims that counsel's failure to file a motion constitutes ineffective assistance, the Second Circuit has held that, "for purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation.  Counsel certainly is not required to engage in the filing of futile or frivolous motions." *United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987) (internal citation omitted); *accord Jones v. Barnes*, 463 U.S. 745, 754 (1983); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

To prove prejudice in the plea context, the defendant must prove that there is a reasonable probability that, but for counsel's errors: (i) he would have accepted a plea offer; (ii) the plea offer would not have been withdrawn by prosecution in light of the intervening circumstances; (iii) the court would have accepted the terms of the plea offer; and (iv) the "conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed." *Lafler*, 566 U.S. at 164.

In evaluating prejudice, the Court "need not accept [the defendant's] self-serving, post-conviction statements that [he] would have pleaded guilty if properly advised." *Dodakian v. United States*, No. 14 Civ. 01188 (AJN) (SN), 2015 WL 11144511, at *14 (S.D.N.Y. Aug. 14, 2015), *report and recommendation adopted*. "[I]n most circumstances a convicted felon's self-serving testimony is not likely to be credible." *Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003). Rather, the defendant must provide a "sworn statement" that is "credible in light of all the relevant circumstances" and "accompanied by objective evidence." *Vargas v. United States*, 951 F. Supp. 2d 531, 550 (S.D.N.Y. 2013) (citations and internal quotation marks omitted). Objective evidence may come in the form of a "significant disparity" between the sentence recommended in the plea offer and the sentence imposed after a conviction at trial. *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003). However, such a disparity in outcomes does not mandate a finding of prejudice. Rather, "[e]ven with such a disparity . . . the district court must still find the defendant's evidence to the effect that he would have made a different decision but for his counsel's deficient advice to be credible." *United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013) (summary order). The Supreme Court has recognized that it is "often quite difficult for petitioners who have acknowledged their guilt to satisfy *Strickland*'s prejudice prong." *Padilla v. Kentucky*, 559 U.S. 356, 371 n.12 (2010).

When considering these two prongs, the Supreme Court has explained that "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697. Therefore, "[a] court need not address both prongs of the Strickland test; if either fails, the entire claim fails." *Grant v. United States*, 725 F. App'x 76, 77 (2d Cir. 2018) (summary order). "[T]he object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018). The defendant bears the burden of establishing both elements. *Strickland*, 466 U.S. at 687.

### C.  Evidentiary Hearing

The filing of a Section 2255 petition does not, by itself, obligate the district court to conduct an evidentiary proceeding. *See Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977). To justify a hearing, the petition "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013); *see also United States v. Stantini*, 85 F.3d 9, 19-20 (2d Cir. 1996) (no need for further factual development because petitioner failed to raise plausible ineffectiveness claim regarding attorney's performance in plea negotiations or at trial); *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009).

Where a movant seeks Section 2255 relief based on "self-serving, conclusory statements [that] are directly contradicted by [the movant's] sworn statements at the plea hearing," a court may deny the Section 2255 motion without further hearing. *Reinsing v. United States*, Nos. 19 Civ. 5674 (VM), 16 Cr. 442 (VM), 2021 WL 1326909, at *12 (S.D.N.Y. Apr. 8, 2021) (citing *Brown v. United States*, 637 F. Supp. 2d 212, 223 (S.D.N.Y. 2009)); *cf. United States v. Martinez*,

Nos. 13 Civ. 3454 (KMK), 09 Cr. 1022 (KMK), 2014 WL 7146846, at *8 (S.D.N.Y. Dec. 12, 2014) ("Courts have repeatedly rejected such self-serving, uncorroborated statements that contradict statements during a colloquy as a basis to challenge a sentence." (citing *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001); *Hsu v. United States*, 954 F. Supp. 2d 215, 221 (S.D.N.Y. 2013); *McNaught v. United States*, 646 F. Supp. 2d 372, 383 (S.D.N.Y. 2009); *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))).

Because statements made at a plea allocution "carry a strong presumption of verity," *Blackledge*, 431 U.S. at 74, "unsupported allegations" that contradict a prior statement made under oath are not enough to render a plea involuntary, *United States v. Gonzalez*, 970 F.2d 1095, 1100–01 (2d Cir. 1992); *see also Gutierrez v. United States*, No. 02 Cr. 1312, 2005 WL 2207026, at *4 (S.D.N.Y. Sept. 6, 2005) ("Petitioner's uncorroborated assertion that he was induced to plead guilty by his attorney's false promise is not enough to overcome the presumption of voluntariness created by his sworn statements to the Court during his plea allocution.").

## II.  Argument

### A.  Goyal's Counsel Provided Constitutionally Effective Representation During Pre-Indictment Plea Negotiations

Goyal asserts that counsel was ineffective during pre-indictment plea negotiations because, he alleges, counsel advised him not to accept the 2019 Plea Agreement and claimed that "he could win this case."  (Pet. 4.)  But for this advice, Goyal represents, he would have pleaded guilty and the Court would have imposed a shorter sentence than the 96 months that it ultimately imposed years later after Goyal committed additional crimes while on pre-trial release.  This claim fails, as it is full of incredible assertions that are explicitly contradicted by Goyal's former counsel, and belied by Goyal's sworn statements in open court and his having signed the 2019 Plea Agreement. *See* Ex. C.

In *Purdy*, the Second Circuit ruled that, even though counsel "never advised [his client] in so many words" as to whether to plead guilty, counsel was effective because he advised his client on the factors necessary to allow his client to make an informed decision, such as the strength of the Government's case and other benefits of pleading guilty. *Davis v. Greiner*, 428 F.3d 81, 89 (2d Cir. 2005) (alteration in original) (quoting *Purdy*, 208 F.3d at 47–48). That is precisely what counsel did here. *See United States v. Delgado*, No. 96 Cr. 126 (JFK), 2018 WL 895615, at *5 (S.D.N.Y. Feb. 13, 2018) ("Failure to persuade a defendant to accept a guilty plea does not qualify as deficient representation.").

Goyal seeks to manufacture an ineffectiveness claim through unbelievable statements that are belied by his sworn statements in open court and explicitly contradicted by his former counsel in all material respects. At the outset, Goyal stated under oath during his September 13, 2021 guilty plea that he was satisfied with his attorneys' representation. (Plea Tr. at 4-5). This alone is fatal to his ineffectiveness claim as statements made at a plea allocution "carry a strong presumption of verity," *Blackledge*, 431 U.S. at 1977.

The Court also need not and should not credit Goyal's self-serving assertions where, as here, counsel has submitted detailed sworn affidavits describing their communications with Goyal about the plea process, and candidly responding to each of Goyal's assertions. These affidavits are the type of credible written testimony credited by courts without an evidentiary hearing in the face of "generic claim[s]" like Goyal's based "solely on his own highly self-serving and improbable assertions." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001).

Goyal cannot demonstrate any ineffective representation during pre-indictment plea negotiations. Goyal claims, implausibly, that counsel told him not to accept the 2019 Plea Agreement offer. But this is contradicted by the fact that on October 10, 2019, Goyal and counsel

*signed the 2019 Plea Agreement* and sent it to the Government.  *See* Ex. C; (Ex. A ¶ 19; Ex. B ¶ 19).  Indeed, a change-of-plea court proceeding was even scheduled for November 8, 2019 before Goyal backed out at the last minute.  (Ex. A ¶ 21; Ex. B ¶ 20).  Both Mukasey and Young are steadfast that they advised Goyal of the difficulties he would face at trial, did not advise Goyal to reject the 2019 Plea Agreement offer because they "would win his trial," did not advise Goyal that a guilty plea was not in his best interest, and did not promise or guarantee Goyal that they would win his trial.  (Ex. A ¶ 22; Ex. B ¶ 21).  Among other things, following months of plea negotiations and discussions with Goyal, Mukasey further informed Goyal that if he did not accept the 2019 Plea Agreement offer, the Sentencing Guidelines range of 51 to 63 months' imprisonment would get much higher.  (Ex. A ¶ 18; Ex. B ¶ 18).  "[C]ounsel's failure to persuade [the defendant] to plead guilty cannot, without more, constitute unreasonable performance under *Strickland* . . . [t]he fact that [petitioner] now regrets the choice he made does not mean that his counsel acted unreasonably."  *Beras v. United States*, No. 05 Civ. 2678 (SAS), 2013 WL 1155415, at *17 (S.D.N.Y. Mar. 20, 2012).

The Court may decide a motion based on ineffective assistance of counsel on the written record where, as here, the movant's allegations lack credibility and are contradicted by the record. *See*, *e.g.*, *Wang v. United States*, 458 F. App'x 44, 46 (2d Cir. 2012) (summary order) (reasonable for court to decide petition on written record where petitioner's allegations were "incredible in and of themselves" and were contradicted by other affidavits and plea colloquy); *Neal v. United States*, No. 08 Cr. 86 (KBF), 15 Civ. 7665 (KBF), 2016 WL 2993200, at *1 (S.D.N.Y. May 23, 2016) ("The combined submissions of the parties provide a sufficient basis upon which to deny the petition, and the Court concludes that a full testimonial evidentiary hearing would not offer any

reasonable chance of altering its view on the facts as alleged by Neal, including the details added in his petition.") (citing *Chang*, 250 F.3d at 86).

In short, counsel's performance fell within an objective standard of reasonableness.

Even if Goyal could show that counsel's plea-related performance was deficient—and he cannot—he would not be entitled to relief because he is unable to establish prejudice. Goyal offers only the threadbare, generalized assertion that he "would have accepted" the 2019 Plea Agreement offer and that this would have resulted in a shorter sentence. However, "a defendant may not rely solely on his own, self-serving statement post-[conviction] that he would have accepted a more favorable plea deal." *United States v. Bent*, 654 F. App'x 11, 13 (2d Cir. 2016) (summary order); *see also Zandi v. United States*, 460 F. App'x 51, 52–54 (2d Cir. 2012) (summary order) (rejecting, without a hearing, defendant's argument based on his sworn affidavit that he would have accepted a plea offer). Because Goyal fails to offer any "objective evidence" supporting his claims, no prejudice can be found. *Gordon*, 156 F.3d at 381.

Since Goyal's "claim of prejudice [is] implausible on its face, and he identifies no evidence that he could . . . introduce[] at an evidentiary hearing that would . . . help[] him establish prejudice," a hearing would be fruitless and the petition should be denied without a hearing. *Bent*, 654 F. App'x at 14 (affirming district court's denial of habeas petition based on ineffective assistance during plea negotiations without an evidentiary hearing).

### B.  Goyal's Counsel Provided Constitutionally Effective Representation During Post-Indictment Plea Negotiations

Goyal next asserts that counsel was ineffective during post-indictment plea negotiations because, he avers, counsel induced his guilty plea by advising him that (a) a conviction after trial "would result in the imposition of 30 years imprisonment," and (b) there was no defense to the charges. (Pet. 6.)  This is baseless.  As for the former argument, it is implausible and explicitly

contradicted by Goyal's former counsel and belied by Goyal's sworn statements in open court. And the latter position, that there was no defense to the charges, is true. Thus, there was nothing ineffective about counsel's performance.

**30 Years' Imprisonment.** Goyal insists that counsel induced his guilty plea by advising him that a conviction after trial "would result in the imposition of 30 years imprisonment." (Pet. 6). This is unsupported and, in fact, affirmatively contradicted by the record.

On September 13, 2021, Goyal pleaded guilty pursuant to the 2021 Plea Agreement. *See* Exhibit E. The 2021 Plea Agreement, signed by Goyal and his counsel, made clear that

> [i]t is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive.

*Id.* at 7. This language is at odds with Goyal's allegations about counsel's comments about the certainty of his post-trial sentence. And during his plea allocution under oath, Goyal confirmed that he had reviewed this 2021 Plea Agreement in its entirety with his attorney and understood its terms. (Plea Tr. at 23).

Moreover, during Goyal's plea allocution, the Court confirmed that nobody had promised Goyal what his sentence would be and that he understood that the sentencing Guidelines calculations in the 2021 Plea Agreement were not binding on the Court, which would make its own determination of Goyal's Guidelines range, and would consider the Guidelines and the sentencing factors under 18 U.S.C. § 3553, in determining the appropriate sentence. (*Id.* at 20-21, 24). Goyal further affirmed that he understood that even after the Court determines the Guidelines

range, the Court "might settle on a sentence higher or lower than what the guidelines recommend." (*Id.* at 21).

Additionally, the Court asked Goyal whether he understood that under the 2021 Plea Agreement, if Goyal's "sentence is different from what [his] lawyer or anyone else told [him] it might be or if it's different from what [he] expect[s] or if it's different from what's contained in [his] plea agreement with the government," then he still nonetheless will be "bound by [his] guilty plea and [he] will not be allowed to withdraw [his] guilty plea?" (*Id.* at 24). Goyal confirmed that he understood. Goyal further made clear that nobody had promised him what his sentence would be. (*Id.*).

As before, Mukasey and Young have submitted detailed sworn affidavits describing their communications with Goyal about the plea process, and refuting Goyal's assertions. For their part, Mukasey and Young credibly maintain that they advised Goyal that the Court was not a party to the 2021 Plea Agreement, was not bound by its Stipulated Guidelines Range, and was not bound by the Guidelines themselves, which are simply advisory, and that the Court could sentence him above or below the Stipulated Guidelines Range of 151-188 months. (Ex. A ¶ 46; Ex. B ¶ 45). Mukasey, consistent with the Court's plea colloquy and Rule 11 of the Federal Rules of Criminal Procedure, explained to Goyal that the sentence to be imposed on him would be determined solely by the Court with reference to a Pre-Sentence Report, the advisory Sentencing Guidelines, the factors enumerated in 18 U.S.C. § 3553(a), and the parties' written submissions, and that his ultimate sentence would be up to the Court. (*Id.*) Contrary to Goyal's naked claims, neither Mukasey nor Young promised or guaranteed Goyal that he would receive any specific sentence after a plea or trial. (Ex. A ¶ 50; Ex. B ¶ 49).

Since Goyal's allegations lack credibility and are contradicted by the record, the Court should reject them.  Goyal is unable to meet his burden of showing that counsel's performance fell below an objective standard of reasonableness.

**No Defenses.**  Nor was there anything deficient about counsel's accurate advice that Goyal did not have any defense to the charges to which he pleaded guilty.  It is axiomatic that "a petitioner cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit." *Harrington*, 562 U.S. at 130.  Simply put, the "failure to make a meritless argument does not rise to the level of ineffective assistance."  *Kirsh*, 54 F.3d at 1071; *see also Regalado*, 518 F.3d at 149 n.3 (same); *Abad*, 514 F.3d at 275–76 ("counsel could not therefore have been ineffective for failing to make a motion that would have been futile.").

Goyal claims that counsel was deficient for failing to advise him that Counts One, Two, and Three were legally insufficient and barred by the statute of limitations. (Pet. 7-9)  But, as to the former, counsel did in fact move to dismiss Counts One through Three on the basis that these Counts were legally insufficient.  (Dkt. No. 18 at 1, 8-15; Ex. A ¶ 30).  However, the Court denied this baseless motion to dismiss, ruling that the charges were "more than sufficiently specific" in the "detailed speaking indictment" that "gives plenty of detail about the scheme and how it was carried out."  (Dkt. No. 40 at 3).  Likewise, the claim that Counts One through Three were barred by the statute of limitations is also meritless, and so counsel was not ineffective for declining to raise this futile issue, nor was Goyal prejudiced.  *See United States v. Rutigliano*, 790 F.3d 389, 396 (2d Cir. 2015) (wire fraud and healthcare fraud are continuing offenses); *United States v. Mermelstein*, 487 F. Supp. 2d 242, 256 (E.D.N.Y. 2007) (false statements relating to health care matters is a continuing offense).

Goyal next contends that counsel was deficient for advising Goyal to enter a guilty plea when, he argues, the enhanced penalties in 18 U.S.C. § 3147 were inapplicable because the Court failed to advise him of these penalties before he was released on bail.  (Pet. 9).  This too misstates the record.  On November 22, 2019, before Goyal's release, Judge Davison explicitly warned Goyal that he would face severe consequences should he commit another felony while on pretrial release:

> THE COURT: If you don't follow Pretrial's instructions, you're in violation of your bail conditions.  Your bail could be revoked.  Sir, this is a setting of bail. That means, upon your release, you must refrain from committing any violations of law whatsoever.  That includes federal, state and local crimes.  If you commit a felony while you're on release for this charge, you may be subject to an additional prison term of up to ten years.  That's on top of whatever you're facing on these charges and on top of whatever you might be facing on the new charges. . . .
>
> . . . If you violate any of the conditions of your release, your bail may be immediately revoked and you may be detained pending trial.

(Dkt. No. 110 at 11-2; Ex. A ¶ 24).

At a conference later on the same day, *see* Exhibit D, this Court reiterated the serious consequences that could follow if Goyal violated his bail conditions:

> THE COURT: All right.  So, Dr. Goyal, you're going to be released on the conditions set by the Magistrate Judge this morning.  Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: All right.  And you understand the consequences can be very serious if you violate any of those conditions?
>
> THE DEFENDANT: Yes, ma'am.

(Ex. D at 6; Ex. A ¶ 25).

That same day, as part of his pre-trial release appearance bond, Goyal signed an Advice of Penalties and Sanctions that made clear: "While on release, if you commit a federal felony offense

the punishment is an additional prison term of not more than ten years . . . .  This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive."  (Dkt. No. 5 at 3; Ex. A ¶ 26).  Goyal signed and acknowledged that he was "aware of the penalties and sanctions set forth above." (Dkt. No. 5 at 3).  Thus, since this claim is also meritless, counsel again was not ineffective for declining to raise this futile issue, nor was Goyal prejudiced by counsel's conduct.

Finally, Goyal submits that counsel was deficient for advising him to plead guilty to Count Four, bank fraud.  (Pet. 9-10).  Here, he avows, the PPP funds he received from the bank were not the bank's (they were instead the Government's) and so his conduct fell outside the elements of bank fraud.  Goyal also claims that he intended to repay the loans.

There is no factual or legal support for either of these claims; so, they must fail.  The S1 Superseding Indictment alleges that Goyal executed a scheme "to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of" *financial institutions* (not the Government) insured by the Federal Deposit Insurance Corporation.  (Sup. Ind. ¶ 59).  Thus, Count Four does not allege that the funds were the Government's; instead, it properly alleges that the funds were under the bank's control.  There is nothing unusual about this charge in a PPP fraud case.  Indeed, defendants, like Goyal, are regularly convicted of bank fraud or bank fraud conspiracy for similar PPP frauds.  *See, e.g.*, *United States v. Kukaj*, 20 Cr. 660 (ALC); *United States v. Ilori*, 21 Cr. 746 (MKV).

Nor is there any record evidence that Goyal intended to repay the loans.  In any event, whether he did or did not intend to repay the PPP loans is of no moment, as loss to the bank is not an element of bank fraud.  *See United States v. Rigas*, 490 F.3d 208, 231 (2d Cir. 2007).  Since

both of these arguments are futile and would have failed, counsel was not ineffective for failing to raise them.  *See Abad*, 514 F.3d at 275–76.

## <u>CONCLUSION</u>

For the foregoing reasons, Goyal's claims are all meritless.  The Petition should therefore be denied without an evidentiary hearing.

Dated:       New York, New York
             July 5, 2023

                                          Respectfully submitted,

                                          DAMIAN WILLIAMS
                                          United States Attorney for the
                                          Southern District of New York

                            By:      ___/s/_____
                                          Vladislav Vainberg
                                          David Felton
                                          Margery Feinzig
                                          Assistant United States Attorneys
                                          (212) 637- 1029 / -2299 / (914) 993-1903