UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
AMEET GOYAL,

             Petitioner,

      -against-

UNITED STATES OF AMERICA,

             Respondent.
-------------------------------------------------------- x

<u>ORDER</u>

19-CR-844 (CS)
23-CV-1516 (CS)

<u>Seibel, J.</u>

      Petitioner Ameet Goyal has filed a petition under 28 U.S.C. § 2255 alleging that he received ineffective assistance of counsel.   (ECF No. 123; *see* ECF Nos. 135, 140-42, 154.)[1] The Government has opposed.   (ECF Nos. 136, 152; *see* ECF No. 155.)   Familiarity with the Petition, prior proceedings in the case, the general legal standards governing Section 2255 petitions, and the special solicitude due to *pro se* litigants is presumed.

      On September 13, 2021, pursuant to a plea agreement with the Government, Petitioner pleaded guilty to health care fraud, in violation of 18 U.S.C. § 1347; wire fraud, in violation of 18 U.S.C. § 1343; and false statements related to health care benefit programs, in violation of 18 U.S.C. § 1035.   Petitioner was an ophthalmologist and oculoplastic surgeon, and all three counts related to his scheme to defraud the Medicare program, private insurers and patients by submitting false claims that misrepresented the services provided – usually by "upcoding" a simpler procedure, such as the removal of a chalazion (a bump on the eyelid), by billing it as a more complex one, such as an orbitotomy (a surgery within the orbit of the eye).   He also

---

[1] All docket references are to No. 19-CR-844.

pleaded guilty to bank fraud, in violation of 18 U.S.C. § 1344; false statements to a bank, in

violation of 18 U.S.C. § 1014; and false statements in a matter within the jurisdiction of the

executive branch of the United States government, in violation of 18 U.S.C. § 1001.   Those

three counts related to a scheme whereby Petitioner obtained two Paycheck Protection Program

("PPP") loans to which he was not entitled by, among other things, falsely stating that he had

sought only one such loan and that he was not under indictment.   Because he committed the PPP

fraud while under indictment, those counts were subject to enhanced penalties pursuant to 18

U.S.C. § 3147.   (ECF Nos. 21, 112.)   Petitioner admitted that between 2010 and 2017, he

willfully and intentionally made false statements to insurers and the Medicare program, and

caused his employees to do so, in order to get reimbursed for medical services at a higher rate

than that to which he was entitled.   (ECF No. 112 ("Plea Tr.") at 31:15-25.)   He further

admitted that in April 2020, while he was out on bail on the health care fraud charges, he

knowingly and intentionally applied for loans without truthfully disclosing that he was under

indictment, because he knew that that fact would disqualify him from receiving the loans.   (*Id.*

at 32:1-8.)

On March 3, 2022, Petitioner was sentenced principally to 60 months' imprisonment on

the three health care fraud counts, to run concurrently with one another, and 36 months'

imprisonment on the PPP fraud counts, to run concurrently with one another but consecutively to

the health care fraud counts, for a total of 96 months' imprisonment.   (ECF No. 108; *see* ECF

No. 134 ("Sent. Tr.") at 56:6-10.)

On February 23, 2023, Petitioner filed a petition under § 2255 alleging that he had turned

down an early plea offer based on ineffective assistance of counsel and that his acceptance of the

offer he ultimately took was also based on ineffective assistance of counsel.   (ECF No. 123.)
After the Government responded, (ECF No. 136), Petitioner replied, raising numerous new
arguments, (ECF Nos. 140-41).   The court treated the reply as an amended petition, (*see* ECF
Nos. 143-45, 147), and allowed the Government to submit a supplemental opposition, (ECF No.
152), and Petitioner to submit a supplemental reply, (ECF No. 154).

I.    <u>Ineffective Assistance of Counsel</u>

To establish ineffective assistance of counsel, a petitioner must affirmatively show that
"1) counsel's performance fell below an objective standard of reasonableness according to
prevailing professional norms, and 2) it is reasonably likely that prejudice occurred – *i.e.*, that
but for counsel's unprofessional errors, the result of the proceeding would have been different."
*United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *Strickland v. Washington*, 466
U.S. 668, 687-96 (1984)).[2]

When evaluating counsel's performance under the first prong of the test, a reviewing
court applies a strong presumption that counsel "rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional judgment."   *Strickland*, 466 U.S.
at 690.

> Judicial scrutiny of counsel's performance must be highly
> deferential.   It is all too tempting for a defendant to second-guess
> counsel's assistance after conviction or adverse sentence, and it is
> all too easy for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act or omission
> of counsel was unreasonable.   A fair assessment of attorney
> performance requires that every effort be made to eliminate the
> distorting effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct from

---

[2] Unless otherwise indicated, all case quotations omit internal quotation marks, citations,
alterations and footnotes.

> counsel's perspective at the time.   Because of the difficulties
> inherent in making the evaluation, a court must indulge a strong
> presumption that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the defendant must
> overcome the presumption that, under the circumstances, the
> challenged action might be considered sound trial strategy.   There
> are countless ways to provide effective assistance in any given
> case.   Even the best criminal defense attorneys would not defend a
> particular client in the same way.

*Strickland*, 466 U.S. at 689.

A defendant is entitled to effective assistance in connection with plea negotiations, *Lafler v. Cooper*, 566 U.S. 156, 162 (2012), but counsel fails in that regard only if he or she fails to communicate a plea offer or provides objectively unreasonable advice about it, *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998).   "Counsel's advice about whether to accept or reject a plea . . . constitutes strategic advice that should not be second-guessed by the court."   *United States v. Peterson*, 896 F. Supp. 2d 305, 315 (S.D.N.Y. 2012).   Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."   *Strickland*, 466 U.S. at 690-91.

Ineffective assistance during plea negotiations can invalidate a guilty plea to the extent it undermines the voluntary and intelligent nature of the decision to plead guilty, *Arteca*, 411 F.3d at 320, but "[t]he Second Circuit has noted the difficulty of challenging counsel's strategic decisions after having pleaded guilty:   to raise a claim despite a guilty plea . . . , the petitioner must show that the plea agreement was not knowing and voluntary, because the advice he received from counsel was not within acceptable standards."   *Yalincak v. United States*, No. 08-

4

CV-1453, 2011 WL 4502817, at *9 (D. Conn. Sept. 28, 2011), *reconsideration denied*, 2013 WL 2467922 (D. Conn. June 7, 2013).[3]   "Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because representation is an art, and there are countless ways to provide effective assistance in any given case."   *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000).

Under *Strickland*'s second prong, the reviewing court must determine "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different."   *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994). This analysis requires more than "mere outcome determination," but also mandates "attention to whether the result of the proceeding was fundamentally unfair or unreliable."   *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).   Prejudice cannot be shown "if the claim or objection that an attorney failed to pursue lacks merit."   *Harrington v. United States*, 689 F.3d 124, 130 (2d Cir. 2012).   "Counsel certainly is not required to engage in the filing of futile or frivolous motions."   *United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987).

In the context of a rejected plea offer, to prove prejudice the petitioner must show a reasonable probability that but for counsel's errors, he would have accepted the offer and been better off.   *Lafler*, 566 U.S. at 164.   Courts are "skeptical of accepting a defendant's self-serving, post-conviction statements that he would have pleaded guilty if properly advised of the

---

[3] Copies of all unreported cases cited in this Decision and Order will be provided to Petitioner.

consequences by his attorney."  *Gluzman v. United States*, 124 F. Supp. 2d 171, 177 (S.D.N.Y. 2000).

In the context of an accepted guilty plea, the prejudice prong is met if Petitioner demonstrates "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[W]hen the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error," he "must also show that he would have been better off going to trial" – that is, that he had a "viable defense."  *Lee v. United States*, 582 U.S. 357, 365-66 (2017).   Thus, the inquiry turns "in large part" on whether a defense "likely would have succeeded at trial" – in other words, whether the defendant "would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received." *Hill*, 474 U.S. at 59

Petitioner bears the burden of establishing both constitutionally deficient performance and prejudice.   *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

II.    Discussion

The Court has tried to extract from Petitioner's voluminous papers the key allegations on which he relies for his claims of ineffective assistance of counsel.[4]   There is some tension in his position, in that he seems to argue both that he would have pleaded guilty early on but for bad

---

[4] Petitioner was advised that his supplemental reply, (ECF No. 154), had to be limited to responding to matters raised in the Government's supplemental opposition, (ECF No. 152). (ECF No. 153.)   His supplemental reply was not so confined, but in light of his *pro se* status I have considered anything even arguably responsive.

advice and that he is not guilty and only pleaded later based on bad advice.   The Court will address each allegation separately.

A.   Pre-indictment Plea Offer

Petitioner alleges, and the Government agrees, that the Government extended a pre-indictment plea offer pursuant to which the parties would have stipulated to a Sentencing Guidelines range of 51-63 months' imprisonment.   (ECF No. 136-3.)   At that time, Petitioner had obtained advice from several attorneys:   Kerry Lawrence, who advised him to accept the offer because it "was the best he could do and [] the risk of a conviction after trial was extremely high," (ECF No. 142 ¶ 8); Foley & Lardner (including attorney Torrey Young), which had negotiated with the Government on Petitioner's behalf along with Mr. Lawrence, (*id.* ¶ 5; ECF No. 141 ("P's Reply") at 3); and Marc Mukasey, who Petitioner had retained "for a second opinion," (P's Reply at 3; *see* ECF No. 136-1 ("MM Decl.") ¶ 11).[5]   The plea agreement was addressed to Mr. Mukasey, and both his partner and Petitioner signed it on October 10, 2019, the day the Government had stated the offer would expire.   (ECF No. 136-3.)[6]   According to Petitioner, in subsequent conversations Mr. Mukasey questioned whether Petitioner thought he was guilty, assured Petitioner that Mr. Mukasey could win at trial even though it was a tough case, and made Petitioner doubt the advice of all the other lawyers that Petitioner should plead guilty.   (P's Reply at 4.)   Petitioner claims that but for Mr. Mukasey's advice that he could win

_____

[5] In March 2020, Ms. Young left Foley & Lardner to become a partner in Mr. Mukasey's firm.   (ECF No. 136-2 ("TY Decl.") ¶¶ 6-7.)

[6] Mr. Mukasey's partner Jeffrey Sklaroff signed Mr. Mukasey's name to the agreement, with his own initials after a slash.   (ECF No. 136-3 at 6.)   There is no suggestion that Mr. Sklaroff acted without Mr. Mukasey's authorization.   (*See* P's Reply at 5 (complimenting Mr. Sklaroff)).

the case, he would have pleaded guilty pursuant to the agreement, and that Mr. Mukasey rendered that advice without having "fully familiarized himself with discovery" or undertaken "a comparative sentencing analysis." (ECF No. 123 ("Pet.") at 4-5.)[7]

Petitioner's claims are meritless. First, his assertions about Mr. Mukasey's failure to prepare are wholly conclusory. *See Russell v. Rock,* No. 08–CV–1894(BMC)(RER), 2009 WL 1024714, at *3 (E.D.N.Y. Apr. 15, 2009) ("[C]onclusory allegations regarding counsel's failure to prepare a defense are insufficient in support of an ineffective assistance claim."); *Powers v. Lord*, 462 F. Supp. 2d 371, 381 (W.D.N.Y. 2008) ("[U]ndetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either *Strickland* prong.") (collecting cases). Second, they are contradicted by detailed declarations from Mr. Mukasey, (MM Decl.), and Ms. Young, (TY Decl.). Both describe the substantial discovery review and analysis they jointly undertook, (MM Decl. ¶¶ 12-13; TY Decl. ¶¶ 11-12, 14); their conversations with Petitioner about the Sentencing Guidelines, his options, and possible outcomes on a plea or after trial (including that the range of 51-63 months in the plea agreement would get much higher if the offer were not accepted); and Petitioner's initial agreement to the offer, the scheduling of the plea, and his subsequent change of heart and decision to go to trial. (MM Decl. ¶¶ 15-22; TY Decl. ¶¶ 15-21.)

Nor has Petititoner established, or even raised a genuine dispute, that Mr. Mukasey assured him of a win at trial. Both Mr. Mukasey and Ms. Young deny having made any such guarantee or promise, or having told Petitioner that the plea was not in his best interest, and both

---

[7] As ECF No. 123 is not paginated, citations to that document use the page numbers assigned by the Courts' Electronic Case Filing system.

contend they advised Petitioner of the difficulties he would face at trial. (MM Decl. ¶¶ 15, 22, 50; TY Decl. ¶¶ 15, 21, 49.) "I do not find [Petitioner's claim] credible, for I am confident that [his] experienced defense counsel would not have made any such promises." *Ramirez v. United States*, No. 00-CV-4561, 2000 WL 1028573, at *1 (S.D.N.Y. July 26, 2000). It is simply not plausible that experienced federal defense counsel would guarantee an outcome to any client. Moreover, that Mr. Mukasey talked Petitioner out of accepting the 51-63 month offer is belied not only by counsel's signature on the plea agreement, (ECF No. 136-3), but by Petitioner's statement, when he ultimately did plead, that he was satisfied with his counsel's representation, (Plea Tr. at 4:22-5:5.) – a statement he would not have made, when pleading to an agreement with a stipulated Guidelines range of 151-188 months (and would not have repeated at his sentencing, (Sent. Tr. at 2:25-3:2)), if his counsel had talked or strong-armed him into passing up an offer of 51-63 months.[8] Finally, that the decision to turn down the 51-63 month offer was Petitioner's alone is further demonstrated by the undisputed fact that in November 2020, after the indictment had been superseded to add the PPP fraud charges to the original health care fraud

---

[8] "A federal habeas court is entitled to rely on statements made during an allocution even in the face of a later, contrary claim." *Papetti v. United States*, No. 09-CV-3626, 2010 WL 3516245, at *8 (E.D.N.Y. Aug. 31, 2010); *see, e.g.*, *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (in rejecting ineffective assistance claim, district court entitled to rely upon defendant's sworn statements in open court that contradicted claim); *Salerno v. Berbary*, 389 F. Supp. 2d 480, 484-85 (W.D.N.Y. 2005) (rejecting challenge to validity of plea where petitioner's allegations in *habeas* proceeding were contradicted by his sworn statements at plea; "[a] trial court may fairly rely upon a [petitioner's] sworn statements made in open court"); *France v. Strack*, No. 99-CV-2510, 2001 WL 135744, at *4 (E.D.N.Y. Jan. 30, 2001) ("Where a petitioner's claims of mistake and coercion find no support in the record and are contradicted by the statements made under oath at the plea proceeding, they do not entitle him to relief.").

charges, Petitioner turned down an offer of 78-97 months that Mr. Mukasey and Ms. Young

urged him to take.   (MM Decl. ¶¶ 39-40; TY Decl. ¶¶ 38-39.)[9]

        In short, Petitioner has not shown that he received substandard advice regarding the

initial plea offer.   Nor has Petitioner shown prejudice.   "To demonstrate prejudice, a defendant

may not rely solely on his own, self-serving statement post-verdict that he would have accepted a

more favorable plea deal." *United States v. Bent*, 654 F. App'x 11, 13 (2d Cir. 2016).   "Rather,

the statement must be accompanied by some objective evidence that supports an inference that

the petitioner would have accepted the proposed plea offer if properly advised."   *Id*.   "This

objective evidence can be a large disparity between the defendant's advised and actual

sentencing exposure," but "[e]ven with such a disparity . . . the district court must still find the

defendant's evidence to the effect that he would have made a different decision but for his

counsel's deficient advice to be credible."   *United States v. Frederick*, 526 F. App'x 91, 93 (2d

Cir. 2013); *see Arteca*, 411 F.3d at 321 (no "mechanistic rules for determining whether an

adequate showing of prejudice has been made"; decision rests on record as a whole); *Meszaros v.*

*United States*, 201 F. Supp. 3d 251, 269 (E.D.N.Y. 2016) (significant disparity does not mandate

finding of prejudice).   Where, as here, the record evidence strongly undermines Petitioner's self-

serving, threadbare assertion that he would have accepted the plea, he has not shown prejudice.

*See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (affirming rejection of "generic claim

. . . based solely on [Petitioner's] own highly self-serving and improbable assertions" in face of

counsel's "detailed description of events [that] was eminently credible").   The same is true of

---

        [9] To the extent Petitioner's complaint is that Mr. Mukasey informed him that he should
not plead if he could not do so truthfully, (*see* P's Reply at 4, 6), the claim is frivolous.
Petitioner cannot seriously contend that advice against committing perjury was improper.

conclusory claims of failure to prepare, which do not establish either substandard performance or prejudice.    *See Encarnacion v. McGinnis*, No. 01-CV-586, 2008 WL 795000, at *13 (N.D.N.Y. Mar. 24, 2008) (collecting cases); *Jones v. Fischer*, No. 05-CV-24, 2006 WL 2583206, at *7 (E.D.N.Y. Sept. 6, 2006); *Brown v. Duncan*, No. 00-CV-290, 2006 WL 1977469, at *13 (N.D.N.Y. July 11, 2006).

      Nor is hearing necessary.

> Although the Circuit's precedent disapproves of summary dismissal of petitions where factual issues exist . . . it permits a middle road of deciding disputed facts on the basis of written submissions.   Indeed, in *Raysor* [*v. United States*, 647 F.3d 491, 494 (2d Cir. 2011)], where the Court reversed the district court for failing to hold a hearing, the Circuit nevertheless re-affirmed the Circuit's earlier holding in *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001), where the Court had concluded that it was within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, and the burden on trial counsel and the government[,] and that the district court reasonably decided that live testimony of the defendant and his trial counsel would add little or nothing to the written submissions.

*Williams v. United States*, No. 07-CV-1804, 2012 WL 1116403, at *5 (E.D.N.Y. Mar. 30, 2012); *see Crisci v. United States*, 108 F. App'x 25, 27 (2d Cir. 2004) (summary order) (within court's discretion to decide petitioner's ineffective assistance claim based on affidavits of petitioner and counsel).

      Here, live testimony from counsel and Petitioner would add little or nothing to the written submissions.   In *Chang*, "the record was supplemented by a detailed affidavit from trial counsel credibly describing the circumstances," and that "record was sufficient to support dismissal of the petition."   250 F.3d at 85.   The same is true here.   Also as in *Chang*, Petitioner's claim is based "solely on his own highly self-serving and improbable assertions," in contrast to the

"eminently credible" version of events from two of his lawyers, and thus it is "within [my] discretion to determine that more [is] not needed."   *Id.* at 86; *see, e.g., Wang v. United States*, 458 F. App'x 44, 46 (2d Cir. 2012) (summary order) (reasonable for court to decide petition on written record where petitioner's allegations were "incredible in and of themselves" and were contradicted by other affidavits and transcript of plea colloquy); *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009) (for purpose of determining whether live hearing necessary, "a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding"); *Lu v. United States*, No. 04-CV-8856, 2006 WL 1663283 at *4 (S.D.N.Y. June 14, 2006) (testimonial hearing not necessary where uncorroborated allegations in petition were contradicted by affirmations of petitioner's two trial attorneys).   Accepting Petitioner's word over that of two of his lawyers would require the Court to disregard both the absence of any indication of ethical blemishes on counsel's part and the fact that Petitioner admittedly committed two separate frauds involving false statements.

In short, Petitioner's claims regarding counsel's advice regarding the 51-63 month plea offer are without merit.

B.    Post-Indictment Claims

Petitioner originally claimed that his counsel were ineffective in connection with the plea he eventually accepted, because they told Petitioner that there was no defense to the charges and that he would receive a thirty-year sentence if convicted after trial.   (Pet. at 6-10.)   After the Government opposed, Petitioner in reply added a grab-bag of additional claims of alleged ineffectiveness.

1.    <u>Pre-Plea Issues</u>

Petitioner seems to contend that his agreement with Mr. Mukasey for a flat fee amounted to a conflict of interest.   He is incorrect.   "[C]ourts have consistently held that there is nothing improper about an up-front flat fee payment scheme."   *Quinones v. United States*, No. 12-CV-6000, 2014 WL 5141551, at *3 (E.D.N.Y. Oct. 14, 2014), *vacated and remanded on other grounds*, 637 F. App'x 42 (2d Cir. 2016); *see Kleinberg v. United States*, No. 00-CV-3621, 2000 WL 686213, at *2 (S.D.N.Y. May 25, 2000) ("This Court disagrees with [Petitioner's] assessment that the payment of a flat fee – a common arrangement – created an actual and impermissible conflict of interest.").   Nor is there any evidence (as opposed to speculation) that that arrangement influenced counsel's decisionmaking (and Mr. Mukasey and Ms. Young deny that it did, (*see* ECF No. 152-1 ("MM Supp. Decl.") ¶ 8(a) ("*flat-out false*" that Mukasey counseled Petitioner based on "financial considerations") (emphasis in original); ECF No. 152-2 ("TY Supp. Decl.") ¶ 9(a) (Mukasey and Young counseled Petitioner based on strength of case, review of facts, exploration of potential defenses, discussions with team, and experience, not on financial rewards))).[10]

_____

[10] To the extent Petitioner complains of Mr. Mukasey asking for an additional payment once the PPP fraud claims were added, (P's Reply at 11), he does not explain why such a request was unreasonable, given that the scope of the case was enlarged to encompass a separate fraud scheme.   Indeed, Petitioner does not dispute that he acknowledged to Mr. Mukasey that the request was fair.   (MM Supp. Decl. ¶ 9.)   Nor does he explain how the request amounted to ineffective assistance.

Petitioner also seems to object to Mr. Mukasey's firm billing him for funds to pay for a Relativity database.   (P's Reply at 11-12.)   Given that his retainer agreement with the firm provided that he would be responsible for reasonable and necessary expenses, (ECF No. 141-1); that Relativity or a similar electronic-discovery system is practically a must in today's white-collar litigation; and that his case involved a large volume of discovery, (*see* MM Supp. Decl. ¶ 21; TY Supp. Decl. ¶ 23), the Court cannot discern how Petitioner's payment for Relativity

Petitioner further contends that Mr. Mukasey did not pay sufficient attention to his case, leaving Petitioner to deal primarily with Ms. Young and associates of the firm.   Lead counsel delegating tasks to colleagues does not come close to constituting substandard performance.   A complex case such as Petitioner's often requires a team approach, and Petitioner cannot have expected Mr. Mukasey to devote all of his time to Petitioner's case.   "Attorneys regularly utilize associate attorneys in the course of their representation of clients.   Without proof that the delegation of work to another attorney was unreasonable and prejudiced [Petitioner], a habeas petition based upon such a claim must fail." *Marrero v. McCoy*, No. 98-CV-1403, 2002 WL 975308, at *4 (N.D.N.Y. Feb. 22, 2002); *cf. United States v. Mittal*, No. 98-CR-1302, 2000 WL 1610799, at *6 (S.D.N.Y. Oct. 27, 2000) (counsel's delegation of certain witness interviews to non-lawyer investigator not substandard performance).[11]

Moreover, Petitioner's claims of inattention are contradicted not only by counsel, again in detail, (MM Decl. ¶¶ 12-13, 15-22, 27-29, 35-36, 39-41, 45-48; TY Decl. ¶¶ 11, 14-21, 38-40, 43-47); MM Supp. Decl. ¶¶ 8(b), 9-10, 13-14; TY Supp. Decl. ¶¶ 11(b), 13-16), but by Petitioner himself, who, for example, summarizes numerous requests he made of Mr. Mukasey and the latter's responses, (P's Reply at 8-9),[12] complains that after he declined the 78-97 month offer in

---

contributes to his claim of ineffective assistance of counsel.   Indeed, in a high-volume paper case, it would almost be ineffective assistance not to use an e-discovery platform.

[11] To the extent Petitioner's complaint is that the associates on the team assembled by Mr. Mukasey did not have experience with health-care cases, (*see* P's Reply at 8), the assertion is puzzling, as Ms. Young, the second-most senior lawyer on the team, had a health-care background, (*id.*; TY Supp. Decl. ¶ 11(a)), and there is no indication that Mr. Mukasey did.

[12] Petitioner complains that Mr. Mukasey declined some in-person meetings as an unnecessary distraction from trial preparation.   (P's Reply at 8.)   He supplies no reason to doubt that that was the case, and indeed his prior counsel at Foley & Lardner cautioned him that the regular evening "all-hands" calls that Petitioner convened were of low value.   (*See* ECF No.

14

December 2020, Mr. Mukasey repeatedly tried to persuade him to reconsider, (*id*. at 11), and

describes information for which Mr. Mukasey repeatedly asked him, (*id*. at 19).   In any event, it

is evident that Petitioner had ample communication with lead and other counsel and was

informed of all significant developments.   Beyond that, the extent to which additional client

conferences are necessary is a matter committed to counsel's discretion.   *See Ordenes v. United*

*States*, No. 05-CV-8968, 2007 WL 1766772, at *11 (S.D.N.Y. June 9, 2007) ("[T]o require a

particular number of meetings between counsel and his client, absent anything more, would

effectively impose the sort of mechanical rule governing counsel's behavior that the *Strickland*

Court disfavored."); *Byas v. Keane*, No. 97-CV-2789, 1999 WL 608787, at *5 (S.D.N.Y. Aug.

12, 1999) ("To require that counsel meet with petitioner a specific number of times would

effectively establish a mechanical rule in defiance of *Strickland*.").

Petitioner also criticizes the quality of the pretrial preparation by his defense team.   He

does not undermine counsel's showing of a thorough legal and factual investigation, (MM Supp.

Decl. ¶¶ 8-9, 12-13, 18; TY Supp. Decl. ¶¶ 8-10, 14-17, 20), nor does he dispute that they made

numerous substantive motions on his behalf, (ECF Nos. 16-18, 29-31, 41, 46, 52, 62-63, 73),

managed to keep him from getting detained after he committed the PPP fraud while out on bail,

(*see* ECF Nos. 19, 23-24), and obtained a sentence well below his Guidelines range (and in line

with the November 2020 offer he declined), (*see* ECF Nos. 104-115).   Instead he focuses on a

few specific items.

---

141-2.)   It is not substandard performance, and indeed is an efficient use of lead counsel's time,
to have more junior attorneys handle day-to-day interactions with high-maintenance clients.

First, he asserts that Mr. Mukasey and Ms. Young refused without explanation to obtain information from a New York State database called SPARCS, which contains information about surgeries done in hospitals and ambulatory surgery centers and which he contends would have shown that he was not the highest biller of orbitotomies in the state and that the time spent on his procedures was longer than would have been necessary for a simple chalazion removal.   (P's Reply at 8-9; ECF No. 154 ("P's Supp. Reply') at 3.)   Counsel's declarations show that Ms. Young did investigate and consider the SPARCS data but determined that it was not exculpatory or strategically beneficial, and that this determination was communicated to Petitioner.   (MM Supp. Decl. ¶ 15; TY Supp. Decl. ¶ 17.)   Petitioner responds that Ms. Young in her supplemental declaration was vague about why she so concluded, (P's Supp, Reply at 3),[13] but a reviewing court may not "insist counsel confirm every aspect of the strategic basis for his or her actions," and "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect," *Harrington v. Richter*, 562 U.S. 86,   109 (2011).   In any event, in this instance it is easy to see why counsel reached that conclusion.   Even assuming that the records would show that Petitioner was not the highest-volume biller of orbitotomies done in hospitals or ambulatory surgery centers in the state,[14] that

[13] Counsel's reluctance to explain why the SPARCS data did not help Petitioner's case was no doubt influenced by her ethical obligation to say no more than reasonably necessary to respond to Petitioner's allegations.   (*See* TY Supp. Decl. ¶ 4.)

[14] Nor has Petitioner shown prejudice, as evidence regarding hospital and ambulatory care center orbitotomies in New York would not have undermined the Government's allegation that Petitioner was the tristate area's highest biller to Medicare of complex conjunctivoplasties with buccal grafting, billing for that procedure seven times more than all other doctors combined, or that he similarly was ranked first or second in billing codes for orbitotomy, flap repair with large defect, and eyelid reconstruction.   (ECF No. 115 ("PSR") ¶ 28.)   In other words, he has not explained how, even if the procedures done at the facilities captured by SPARCS were legitimate, that would undermine the Government's allegation – to which Petitioner admitted –

would not undermine the evidence that he routinely and intentionally billed simple procedures –

many of which would have been done in his offices – as orbitotomies.    That evidence included

testimony from several doctors who worked for him, observed the upcoding and were pressured

into doing the same thing; testimony from Petitioner's staff about his instructions to upcode;

expert testimony that only 2% of Petitioner's billed orbitotomies and only 3% of his billed

conjuctivoplasties were supported by the patient chart, with the vast majority of those procedures

clearly upcoded; and patient testimony.   (*See* Plea Tr. at 26:17-30:9; PSR ¶¶ 15-59; ECF No.

105 at 2-34; Sent. Tr. at 14:2-23:21, 29:15-30:12.)[15]    Given the "strong presumption" that a

lawyer's conduct "falls within the wide range of reasonable professional assistance," *Strickland*,

466 U.S. at 689, Petitioner has not "overcome the presumption that, under the circumstances, the

challenged action, might be considered sound trial strategy," *id.*; *see Hernandez v. Uhler*, No.

15-CV-6684, 2017 WL 3670031, at *7 (E.D.N.Y. Aug. 25, 2017) ("In fact, depending on the

circumstances, even an attorney's decision not to call witnesses that might offer exculpatory

evidence is ordinarily not viewed as a lapse in professional representation.").

Petitioner further criticizes counsel for not obtaining video of a tear duct procedure

performed at Greenwich Hospital.   (P's Reply at 13-17.)   Both counsel and the Government

represent that counsel did obtain that video.   (TY Supp. Decl. ¶ 22; ECF No. 152 at 4, 15.)

Even if they had not, Petitioner has not carried his burden to show prejudice, as he has not shown

---

that he made false claims to obtain reimbursements to which he was not entitled.

[15] This sentence greatly abbreviates both the quantity and quality of the evidence as to the
health care fraud counts.   The cited documents describe the overwhelming evidence on which
the court does not further elaborate in the interest of brevity.

that that video would have convinced a factfinder to ignore the testimony of two doctors who later treated the patient and saw no evidence that the billed-for procedure had been done, let alone how it would have undermined the massive other proof of Petitioner's upcoding scheme. Indeed, the patient in question was apparently not even going to be a subject of Government proof at trial, (ECF No. 152 at 17), so even if the video showed an appropriately performed and billed procedure, it would have been inadmissible, *see United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (that some of defendant's actions were not fraudulent "simply irrelevant" to whether charged acts were fraudulent); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (defendant may not seek to establish innocence through proof of absence of criminal acts on specific occasions).

Petitioner further suggests that counsel did not consider a surgical assistant and patient who he alleges would have been exculpatory witnesses.   (P's Reply at 9-10.)   But counsel interviewed "[Petitioner's] front office staff, billing and coding staff, surgical technicians, physicians with whom he worked, patients, [and his] accountant," apparently including the two witnesses to whom Petitioner refers.   (MM Supp. Decl. ¶ 13; TY Supp. Decl. ¶ 15.)   That counsel concluded that the witnesses would not suffice to overcome the Government's evidence hardly shows substandard performance.   *Cf. Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) ("[C]ounsel's decision as to whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation."); *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (*per curiam*) ("The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess."); *U. S. ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 (2d Cir. 1974)

18

("[T]he decision to call or bypass particular witnesses is peculiarly a question of trial strategy, which courts will practically never second-guess.").[16]   And even if counsel had not interviewed the witnesses, Petitioner does not show prejudice, as he does not allege what evidence regarding billing these witnesses could have provided.   Nor does he confront the fact that counsel retained an expert, who informed them that he would not be able to contradict the Government's evidence as to several of the patients on whom the Government intended to focus at trial.   (MM Supp. Decl. ¶ 12; TY Supp. Decl. ¶ 14.)[17]

"Defendant's criticism of counsel's pretrial preparation, including the lack of attorney-client meetings to discuss the case [and] insufficient investigation of potential evidence . . . reflect defendant's frustration with the end result of the trial rather than any legitimate defect in the quality of representation he was given." *United States v. Lohm*, No. 90-CR-301, 1993 WL 488635, at *15 (N.D.N.Y. Nov. 26, 1993), *aff'd*, 47 F.3d 1157 (2d Cir. 1995).

---

[16] In his supplemental reply, in contravention of the Court's order that it not include new material, (ECF No. 147), Petitioner named additional witnesses.   I disregard them except as to Edward Broccoli, who counsel's supplemental declarations had already addressed.   Counsel interviewed this individual at Petitioner's request and concluded that he would not be a credible witness on the relevant issues.   (MM Supp. Decl. ¶ 14; TY Supp. Decl. ¶ 16.)   Not only is this a strategic issue as to which counsel's judgment should not be second-guessed, but their assessment as to how a jury might view Dr. Broccoli is unsurprising if one reviews a document authored by him and submitted by Petitioner as part of a bail application.   (ECF No. 145-2.)

[17] The only effort in this regard appears in Petitioner's supplemental reply, when he seems to argue that because counsel wanted to ensure that the expert was paid, it must not be true that he could not support all of Petitioner's billings.   (P's Supp. Reply at 2.)   Needless to say, it hardly follows, from the fact that counsel wanted the expert paid so that he would be available if needed, that the expert would have successfully countered all of the Government's proof.

2.    Plea Issues

Moreover, Petitioner makes no effort to reconcile his claims regarding "exculpatory" evidence with his guilty pleas, except to claim that he would have gone to trial were it not for counsel's bad advice.   Petitioner claims that he pleaded guilty only because counsel advised that he had no defense and that he would surely get a thirty-year sentence if convicted after trial.   He further alleges that he had good defenses because the charges were defective.   Neither argument has merit.

a.    Alleged Promise as to Sentence After Trial

Both Mr. Mukasey and Ms. Young aver that Petitioner decided to plead after some adverse rulings on motions *in limine* and that they never guaranteed that he would get a particular sentence after trial.   (MM Decl. ¶¶ 42-50; TY Decl. ¶¶ 41-49.)   And it simply defies credulity that counsel would have made any kind of promise regarding what the sentence would be.   It is inconceivable that two experienced defense lawyers could both have so egregiously misstated the basic rule of criminal practice that the sentence is up to the judge and there are no guarantees.   Nor is it credible that Petitioner, who had already reviewed (and turned down) two previous plea agreements that explained that sentencing is wholly up to the court, who saw the same language in the agreement to which he ultimately agreed, and who was informed by the court before entering his plea that nobody could give any assurance as to sentence, (Plea Tr. at 21:23-22:8), could have actually thought that his (or any) lawyer could know for sure what a Court would do.[18]

_____

[18] These facts belie Petitioner's claim that he was "[u]ntil recently . . . unaware that counsel was incapable of determining or advising (with certainty) what sentence would be imposed if Defendant were convicted after a jury trial."   (Pet. at 7.)   And, contrary to

Counsel did advise Petitioner that the Government's proof was overwhelming and that he would likely get a longer sentence if convicted after trial.   (MM Decl. ¶¶ 47-48; TY Decl. ¶¶ 46-47.)   Such "strong advice from counsel to accept a plea does not rise to the level of coercion that would render such a plea involuntary.   Rather, it merely reflects counsel's truthful, if unwelcome, advice regarding the strength of the [Government's] case and the advisability of accepting the plea bargain."   *Proctor v. McCarthy*, No. 19-CV-2988, 2020 WL 1149660, at *14 (S.D.N.Y. Mar. 10, 2020), *report and recommendation adopted*, 2023 WL 4562405 (S.D.N.Y. July 17, 2023).   This advice may have been disheartening, but it was not wrong.   *See United States v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001) (attorney's "blunt rendering of an honest but negative assessment of [Petitioner's] chances at trial, combined with advice to enter the plea," does not "constitute improper behavior or coercion that would suffice to invalidate a plea"). "Absent any indication that the [advice] was inaccurate, [Petitioner's] attorney's decision to advise his client to plead guilty must be accorded the presumption of reasonableness."   *Gonzalez v. United States*, No. 12-CV-8261, 2013 WL 3305324, at *5 (S.D.N.Y. July 1, 2013).

> ###### b.    Lack of Viable Defenses

Petitioner's arguments regarding the purported legal insufficiency of the indictment, and thus his claims that his lawyers were ineffective for failing to move to dismiss it on the grounds he sets forth, are simply wrong, for two reasons.   One is that counsel did move to dismiss both the health care-related counts and the PPP-related counts, although on different grounds than

---

Petitioner's claim that the "assur[ance] . . . that a conviction after trial would mean a thirty year term of imprisonment at sentencing" was "undoubtedly[] designed to induce a guilty plea, and it worked," (*id.*), Petitioner stated at the plea that aside from the Government's promises in the plea agreement, nobody had promised him anything or offered him any inducement to plead guilty, (Plea Tr. at 24:6-9).

those Petitioner suggests, (*see* ECF Nos. 16-18, 29-31), and counsel's decisions about what

motions are worth making are not ones that a reviewing court may second-guess, *see Harrington*,

562 U.S. at 107 ("Counsel was entitled to formulate a strategy that was reasonable at the time

and to balance limited resources in accord with effective trial tactics and strategies."); *Nersesian*,

824 F.2d at 1322 ("[F]or purposes of effective assistance, not every possible motion need be

filed, but rather, only those having a solid foundation."); *United States v. Sierra*, 372 F. Supp. 3d

187, 194 (S.D.N.Y. 2019) (Sixth Amendment does not obligate defense counsel to file every

motion the facts may superficially support; "[t]he law accords counsel reasonable latitude within

which to make strategic choices regarding which motions the circumstances may sufficiently

warrant, and it treats those professional calls with substantial deference."); *DiMattina v. United

States*, 949 F. Supp. 2d 387, 411 (E.D.N.Y. 2013) ("It is reasonable to infer that experienced trial

counsel chose to allocate resources to pursue more promising defenses rather than one with a low

probability of success."); *Guidice v. United States*, No. 03-CV-4983, 2007 WL 1987746, at *3

(E.D.N.Y. July 3, 2007) (decisions concerning what motions to make "fall squarely within the

ambit of trial strategy and, if reasonably made, cannot support an ineffective assistance claim").

    The other is that the purported defects in the indictment that Petitioner regards as winning

defenses are not defects or winning at all.   He first claims that Count One, charging health care

fraud, was duplicitous in that it grouped distinct violations into a single count.   (Pet. at 2.)   But

the statute, 18 U.S.C. § 1347, permits "the government to charge a single scheme consisting of

several transactions in one count of health care fraud."   *United States v. Mermelstein*, 487 F.

Supp. 2d 242, 255 (E.D.N.Y. 2007).[19]   He contends that Count Two, charging wire fraud, was

---

[19] Petitioner also seems to protest that the description of the health care fraud scheme

defective because it did not specify particular wirings.   (Pet. at 2.)   But "[c]ontrary to the

defendant['s] argument[] . . ., a count of . . . wire fraud need not contain specific uses of the . . .

wires in furtherance of the scheme."   *United States v. Almaleh*, No. 17-CR-25, 2022 WL

602069, at *5 n.6 (S.D.N.Y. Feb. 28, 2022); *see United States v. Zandstra*, No. 00-CR-209, 2000

WL 1368050, at *4 (S.D.N.Y. Sept. 20, 2000) (wire fraud indictment need not identify specific

wirings) (collecting cases).   He argues that Count Three, charging false statements in relation to

health care in violation of 18 U.S.C. § 1035, also charged distinct offenses in a single count, (Pet.

at 3), but again, a violation of that statute may be charged, as it was here, "in one count with a

*scheme* comprised of several acts of falsification or concealment."   *Mermelstein*, 487 F. Supp.

2d at 256 (emphasis in original).

        Petitioner also contends that because portions of the health care fraud schemes occurred

more than five years before he was indicted, Counts One, Two and Three were barred by the

statute of limitations.   (Pet. at 2-3.)   He is again incorrect, as each of those counts alleged

conduct lasting into 2017, within five years of his indictment, and each is properly charged as a

continuing offense.   *See United States v. Rutigliano*, 790 F.3d 389, 396 (2d Cir. 2015) (wire

fraud and health care fraud are continuing offenses); *Mermelstein*, 487 F. Supp. 2d at 255, 256

(health care fraud and health care false statements properly charged as continuing offenses).

Continuing offenses "are not barred by the statute of limitations if the alleged conduct continues

---

mentioned the fact that Petitioner defrauded his patients as well as their insurers, and defrauding
patients does not violate § 1347.   (Pet. at 2.)   That description, however, was incorporated into
Count Two, charging wire fraud in violation of 18 U.S.C. § 1343, and defrauding patients plainly
falls within that charge.   To the extent the reference to patients did not support Count One, it
"was mere harmless surplusage."   *United States v. Rodriguez*, 556 F.2d 638, 641 (2d Cir. 1977).

to a date within the limitations period," *Mermelstein*, 487 F. Supp. 2d at 253, as was charged here.[20]

Thus, none of the purported defects in the indictment regarding the health care counts would have provided any sort of defense for Petitioner, and if counsel had indeed told him that he had no defense (as opposed to what they say they told him, which was the Government's case was very strong and he was likely to be convicted), that unwelcome advice would have been accurate.   For the same reasons, none of the motions that Petitioner thinks counsel should have made with respect to the health care counts would have succeeded.   Counsel cannot be said to have performed below professional standards in not making a meritless motion, nor can Petitioner be said to have been prejudiced by counsel not doing so.   *See Harrington*, 689 F.3d at 130; *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995); *Beniquez v. Johnson*, No. 21-CV-1467, 2023 WL 3948738, at *17 (S.D.N.Y. June 12, 2023).

Petitioner's arguments related to the PPP counts fare no better.   He first seems to contend that Counts 4-6 are somehow invalid because they charged crimes committed while on pretrial release for Counts 1-3, which he contends were time-barred.   (Pet. at 3.)   Not only is that not the case, as discussed above, but even if it were, it is impossible to discern any effect that would have on the propriety of the PPP counts, and Petitioner points to none.   He also contends that those counts improperly invoked 18 U.S.C. § 3147, which provides for enhanced penalties

---

[20] Although Petitioner's attorneys reached the same conclusion, (MM Decl. ¶ 31; TY Decl. ¶ 28-30), Petitioner protests that Ms. Young stated that she did not do the statute of limitations research herself, (P's Reply at 17).   That is not accurate, as Ms. Young avers that she reviewed the case law apparently assembled by a colleague, (TY Decl. ¶ 28), and in any event irrelevant, not only because lawyers are permitted to delegate tasks to their colleagues, but because the conclusion Ms. Young drew was correct.

for crimes committed while on bail, because he was never warned that offenses committed while on release would be subject to such enhancement.    (*Id.*)    This claim is false.    The Magistrate Judge who arraigned Petitioner on the original indictment gave him that warning, (ECF No. 110 at 11:4-12), and it appears on the "Advice of Penalties and Sanctions" form he signed as part of his appearance bond, (ECF No. 5 at 3).    Petitioner further challenges the bank fraud charge in Count Four by arguing that the funds sought by the false loan application belonged to the United States, not the bank.    (Pet. at 3.)    Even if that were true – and it is not, as the Government does not make PPP loans, but simply guarantees them, *see, e.g., Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 408 (2d Cir. 2022); *Pharaohs GC, Inc. v. United States Small Bus. Admin.*, 990 F.3d 217, 224 (2d Cir. 2021) – the fact remains that the funds were under the "custody or control" of the bank, as encompassed by 18 U.S.C. § 1344, *see, e.g., United States v. $1,037,449.63 Seized from One Bank of Am. Acct.*, No. 22-CV-7459, 2023 WL 9420837, at *3 (C.D. Cal. June 6, 2023).    Petitioner also attempts to fault Citibank for setting up two different loans for him, (P's Reply at 19-22), but even if that could somehow excuse his submitting the same payroll report for both loans or his stating in two separate applications that he had not sought another PPP loan, it would not excuse his statement in the loan applications that he was not under indictment. Unsurprisingly, Petitioner offers no argument that could have gotten him out from under that particular lie, which he admitted he made intentionally to get a loan for which he would otherwise be disqualified.    (Plea Tr. at 32:1-8.)[21]

---

[21] Petitioner complains that counsel did not challenge the Government's sentencing allegation that, based on first-in/first out accounting principles, Petitioner spent the PPP money on personal expenses.    (P's Reply at 22-23.)    But the Pre-Sentence Report notes, in connection with that allegation, (PSR ¶ 71), that counsel had objected on the grounds that the account in question already had enough, before the loan proceeds were deposited, to cover the personal

Accordingly, the "defenses" that Petitioner believes renders substandard the advice that he had no defenses are not defenses at all.    Counsel's advice that a plea was his best option did not fall below professional standards, nor did counsel's failure to make the meritless motions Petitioner suggests.  *See United States v. Abad*, 514 F.3d 271, 276 (2d Cir. 2008) (counsel could not have been ineffective "for failing to make a motion that would have been futile"); *Fabre v. Taylor*, No. 08-CV-5883, 2009 WL 162881, at *11 (S.D.N.Y. Jan. 20, 2009) ("Since [Petitioner's] claim that the [Government] could not have proven the [charges] is meritless, counsel cannot be found ineffective for not pursuing a strategy doomed to failure."), *report and recommendation adopted*, 2009 WL 1457169 (S.D.N.Y. May 26, 2009).    Nor can the failure to make meritless motions have prejudiced Petitioner.    *See Whaley v. United States*, No. 09-CR-619, 2024 WL 2847141, at *11 (E.D.N.Y. June 5, 2024) ("counsel were not ineffective for failing to bring meritless motions or arguments without a reasonable chance of success, and, in any event, because any such motions were futile, Petitioner was also not prejudiced as a result by counsel's failure to pursue [them]"); *United States v. Perez-Luna*, No. 07-CV-5533, 2008 WL 5170179, at *4 (S.D.N.Y. Dec. 10, 2008) (where motion would have been meritless, no prejudice from failure to file it).

Finally, even if counsel's advice that Petitioner should plead was substandard, Petitioner has not shown that he otherwise would have insisted on going to trial, or that doing so would have left him better off.  *See Lee*, 582 U.S. at 364-65 ("when the defendant's decision about

---

expenditures, (PSR at 21 n.6).    Counsel also objected to the Government's assertion that Petitioner never sought to return the funds, which were later clawed back by Citibank, (PSR ¶ 72), by noting that the PPP funds were still in the account at the time of the clawback, (PSR at 21 n.7).    In other words, counsel made the arguments Petitioner accuses them of omitting.

going to trial turns on his prospects of success and those are affected by the attorney's error," he must show both that he otherwise would have insisted on going to trial and that he would have been better off doing so).   As counsel – and apparently Petitioner – appreciated, the odds of the Government failing to prove the case were slim, and the plea afforded him substantial benefits.[22] In September 2021, less than two weeks before trial, the Government estimated that Petitioner's sentencing range on a plea without an agreement would be 235-293 months' imprisonment, (MM Decl. ¶ 43; TY Decl. ¶ 42), and it follows that a conviction after trial (in other words, without a two-level reduction in offense level for acceptance of responsibility) would have increased that estimate to 292-365 months.   The Government at that time also offered a plea agreement with a stipulated range of 168-210 months, which counsel convinced the Government to reduce to 151-188 months.   (MM Decl. ¶ 44; TY Decl. ¶ 43.)   By accepting that offer, Petitioner reduced his Guidelines exposure by almost half.   In light of the meritlessness of his defenses and the great disparity in the Guidelines ranges on the plea versus trial, Petitioner has not shown either that he

---

[22] Petitioner also argues that his plea was invalid.   To the extent he argues that the plea proceeding violated Federal Rule of Criminal Procedure 11, the transcript reveals that all portions of that statute were honored, but even if they were not, any such violation would not be cognizable via § 2255, which provides relief for constitutional, not statutory, violations.  *See Mallard v. United States*, No. 95-CR-379, 2009 WL 1873665, at *3 (E.D.N.Y. June 29, 2009).

Petitioner also claims that counsel did not consult with him about appealing, (Pet. at 4), a contention belied by the declarations of Mr. Mukasey and Ms. Young, (MM Decl. ¶ 52; TY Decl. ¶ 51).   In any event, Petitioner was aware of his right to appeal because the court told him of it at sentencing, (Sent. Tr. at 60:19-61:1), and he does not claim he asked counsel to file an appeal.   Further, there is no indication that any appeal would not have been barred by the waiver in his plea agreement or that he had any grounds that would have succeeded on appeal. Petitioner has thus not shown either substandard performance or prejudice.  *See, e.g., Garcia v. United States*, 199 F.3d 1322 (2d Cir. 1999); *Abreu v. United States*, No. 20-CR-52, 2024 WL 4007823, at *4 (S.D.N.Y. Aug. 29, 2024); *Garrison v. United States*, No. 22-CR-613, 2024 WL 3784456, at *2 (S.D.N.Y. Aug. 13, 2024); *Lopez v. United States*, No. 16-CR-403, 2021 WL 4820620, at *5 (E.D.N.Y. Oct. 15, 2021).

\* \* \*

In sum, Petitioner cannot show that his counsel provided substandard assistance or that anything they did caused him prejudice.   Rather, the record is clear that his lawyers put in a thorough and professional effort on behalf of a client whose goose was cooked by the large amount of evidence of his criminal conduct assembled by the Government.   Counsel undertook a comprehensive review of documents, interviewed many witnesses, analyzed the relevant factual and legal issues, made numerous motions, (both procedural, (*see, e.g.,* ECF Nos. 27, 33, 48, 53, 59, 98, 119), and substantive, (*see, e.g.,* ECF Nos. 16-18, 29-31, 41, 46, 52, 62-63, 73)), got the Government to reduce its final plea offer, and made a superb sentencing presentation, (Sent. Tr. at 32:3-44:2), that persuaded the Court to impose a sentence of 96 months' imprisonment, well below the stipulated Guidelines range of 151-188 months.   Petitioner lost the benefit of the Government's initial offer because of his own decision, not because of any guarantee of an acquittal by his lawyers, and then made matters worse by committing new crimes while on release – conduct that made the case essentially unwinnable.   There was no defense that would have succeeded, and his allocutions confirm that he committed both frauds simply to get money to which he knew he was not entitled.   (*See* Plea Tr. at 31:15-32:14.)   Petitioner's fix is of his own making, not his lawyers'.

---

Petitioner's § 2255 petition.   It contains medical information so the court has not filed it publicly, but will provide a copy to the Government and file it under seal.   The application for bail pending decision on the Petition is denied as moot.   The application could be construed as a motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), although it does not address exhaustion required under that statute.   If Petitioner intends it as such, he may so advise the Court, and in that event the Court will set a date for the Government to respond.

<u>Conclusion</u>

In light of the foregoing, the motion under Section 2255 is denied and the Petition is dismissed.   The Clerk of Court is respectfully directed to: 1) docket this Order in both of the above-captioned cases; 2) close No. 23-CV-1516; and 3) provide a copy of this Order to Petitioner by mail at the following address:   Ameet Goyal, No. 87508-054, USP Canaan, U.S. Penitentiary, Satellite Camp, P.O. Box 200, Waymart, PA 18472.   As the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253; *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).

SO ORDERED.

Dated:  January 27, 2025
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.